Marcie E. Schaap #4660
Joseph D. Amadon #16386
Marcie E. Schaap, Attorney at Law, P.C.
4760 S. Highland Drive   #333
Salt Lake City, Utah 84117
Telephone:    (801) 201-1642
Facsimile:    (801) 666-7749
E-mail:
marcie@marcieeschaap.com
joe@marcieeschaap.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| IHC HEALTH SERVICES, INC. dba LDS HOSPITAL, <br><br> Plaintiff, <br><br> v. <br><br> STAMPIN' UP! INC., and STAMPIN' UP! INC. HEALTH BENEFIT PLAN, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 2:19-CV- 00064-TS <br><br> Judge Ted Stewart |

Plaintiff, through its undersigned counsel, complains and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, IHC HEALTH SERVICES, INC. ("IHC"), operates several hospitals in the Intermountain Area, including LDS HOSPITAL, ("LDS" or the "Hospital"), in Salt Lake City, Utah.

2. IHC and the Hospital may be referred to collectively herein as "Plaintiff."

3. STAMPIN' UP! INC. ("SUI" herein) is a Utah corporation.

4. SUI sponsored the STAMPIN' UP! INC. HEALTH BENEFIT PLAN (the "Plan"), a self-funded employee benefit plan for its employees and their beneficiaries.

5. SUI and the Plan may be referred to collectively herein as "Defendants."

6. SUI was, at all times relevant to this action, the Plan Administrator of the Plan, as that term is defined by the Employee Retirement Income Security Act of 1974 ("ERISA").

7. The Defendants contracted with UMR to act as the third-party administrator for the Plan

8. UMR was, at all relevant times herein, an agent of Defendants.

9. C.R. was, at all times relevant hereto, a resident of the State of Utah.

10. C.R. was a participant and beneficiary of the Plan.

11. C.R. signed a written assignment of benefits in favor of Plaintiff for all relevant claims herein, stating: "I hereby assign and transfer to the Facility, and to any other health care provider for whom Facility bills, the benefits of any insurance policy or other arrangement that may provide payment for some or all of my care. I also authorize and appoint the Facility and anyone it may designate as my attorney-in-fact for the purposes of communicating, appealing, negotiating, or otherwise pursuing in its discretion any or all legal remedies with any insurance company, group, organization, entity or any other payer to obtain payment for the Facility for the services that were provided to me. This consent is also intended to meet the requirements of 42 CFR 438.402(b) (ii) which authorizes a provider to file on behalf of an enrollee. I also authorize the Facility to receive and deposit any money received against the charges of the Facility and of any other health care provider for whom Facility bills."

12. Pursuant to the assignment of benefits, Plaintiff is a beneficiary of the Plan.

13. Plaintiff provided medical services to C.R. on January 18, 2016, through January 28, 2016 ("Dates of Service" herein).

14. This is an action brought by the Plaintiff to collect amounts owed for unpaid medical bills resulting from health care services provided to the Patient for which the Defendants agreed to pay but refused to pay once claims were submitted.

15. This is an action brought under ERISA. This Court has jurisdiction of this case under 29 U.S.C. §1132(e)(1). Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) because the communications during the administrative appeal process took place between the Plaintiff and the Defendants in the State of Utah, and the breaches of ERISA and the Plan occurred in the State of Utah. Moreover, based on ERISA's nationwide service of process provision and 28 U.S.C. §1391, jurisdiction and venue are appropriate in the District of Utah.

16. The remedies Plaintiff seeks under the terms of ERISA are for the benefits due under 29 U.S.C. §1132(a)(1)(B), for interest and attorneys' fees under 29 U.S.C. §1132(g), for statutory penalties under 29 U.S.C. §1132(c)(1), and for other appropriate equitable relief under 29 U.S.C. §1132(a)(3).

## FACTUAL BACKGROUND

### A. Medical Treatment

17. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

18. The billed charges for C.R.'s claim totaled $36,314.89.

19. The Defendants have paid $4,440.24 for this claim (12.23% of Billed Charges).

20. A balance of $31,874.65 is still due to the Plaintiff by the Defendants for the services rendered to C.R.

### B. Claims and Claim Processing

21. The Hospital submitted its claims in a timely manner to the Defendants and/or their agents for C.R.'s treatment.

22. The Defendants and/or their agents denied a portion of the claims by contending that the treatment was not medically necessary and was provided by an out-of-network provider.

23. At the time of treatment, C.R. was a 23-year-old man who had attempted suicide by driving his car off a 12-foot embankment at high speed.

24. Extrication from the vehicle was prolonged and he was transferred via LifeFlight to Intermountain Medical Center on January 13, 2016 for evaluation and treatment of his traumatic injuries. When medically stabilized, he received a psychiatric evaluation and inpatient psychiatric admission was recommended.

25. On January 18, 2016, C.R. was transferred to the Hospital for direct admission to the psychiatric unit.

26. During psychiatric evaluation, C.R. acknowledged a history of depression and drug abuse from his teens. He had intermittently taken antidepressants without benefit. His family history included depression, substance abuse, and the completed suicide of his sister 18-months prior to his own attempt. C.R. stated that he had experienced thoughts about suicide since the death of his sister. He currently reported anhedonia, middle and terminal insomnia, and drug use to treat his symptoms. He stated he had been planning his suicide for weeks so that his family did not have to find him. On the date of his attempted suicide, he ingested alcohol and took methamphetamines to make it easier to complete

suicide, which he attempted at about 100 mph.

27. While hospitalized, C.R. was admitted to the geriatric unit due to his increased medical needs. He was placed on suicide precautions with safety checks performed every 15 minutes. A multidisciplinary treatment plan was developed, and he was encouraged to attend individual, group, educational, and recreational therapy sessions. He received consultations from wound care, orthopedics, physical and occupational therapies, and neuropsychology. Later, he was started on Cymbalta. C.R. continued to experience significant pain throughout his hospitalization.

28. On January 24, 2016, C.R.'s parents remained concerned about his potential risk for suicide. Orthopedic consultation was again obtained due to ongoing pain. Occupational and physical therapy services continued to support rehabilitation from his physical injuries.

29. On January 25, 2016, C.R. continued to experience significant pain and received a total of 50 mg of oxycodone in 24 hours. His mood was improving. Neuropsychology testing suggested that he was minimizing his psychiatric symptoms.

30. On January 26, 2016, various placement options declined acceptance of C.R. due to bed availability or inability to meet his medical/mental health care needs. Additional requests for placement were made. C.R. continued to process his stressors and related thought processes.

31. On January 27, 2016, repeat x-rays of C.R.'s right femur showed stable fixation of the comminuted right femur fracture. C.R. reported new pain in his right heel. An x-ray showed soft tissue stranding and no acute bony abnormalities.

32. On January 28, 2016, the surgical staples were removed. C.R. was deemed to be stable

       for discharge to a skilled nursing facility and approval was received from his insurance for the same. His future caregivers were provided with applicable discharge, medication, activity, diet, and wound care instructions, and advised to facilitate his follow-up with the orthopedic surgeon in two weeks, and with psychiatry as arranged.

33. C.R.'s psychiatric admission was medically necessary to treat depression after a serious suicide attempt and manage associated traumatic injuries. All care was provided in accordance with current medical guidelines under the direction of the treating and consulting physicians as indicated by clinical findings, ongoing assessments, and patient reports, and tailored to C.R.'s unique mental and physical health care needs until safe disposition could be arranged.

34. The Plaintiff submitted timely appeals to the Defendants and/or their agents.

35. Defendants have denied Plaintiff's appeals and stated that their benefit determination is final.

36. The Plaintiff attempted to contact the Defendants and/or their agents on many occasions to appeal the denial of this claim, but the Plaintiff's attempts were futile.

37. The Plaintiff has also attempted to communicate with the Defendants on many occasions by phone as set forth in the electronic and written records kept by the Plaintiff of the communications it has had with the Defendants and/or their agents during the claim and appeal processes.

38. Plaintiff's litigation counsel, Marcie E. Schaap, sent a final appeal letter to Defendants and/or their agents on November 12, 2018.

39. A copy of the Plaintiff's communication records was sent to the Defendants prior to this litigation being filed.

40. The Defendants have not paid the outstanding balance due to the Plaintiff for the treatment the Hospital rendered to C.R.

41. A balance of $31,874.65, plus interest, remains due to the Plaintiff from the Defendants for the treatment the Hospital rendered to C.R.

### FIRST CAUSE OF ACTION
(Recovery of Plan Benefits Under 29 U.S.C. §1132(a)(1)(B))

42. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully stated herein.

43. The Plaintiff has submitted all proof necessary to the Defendants to support its claims for payment.

44. The Defendants have failed to provide evidence to the Plaintiff to support their basis for denial.

45. The Defendants have not fully reviewed or investigated all information sent to it by the Plaintiff and/or the Hospital, or available to it, which has caused the Defendants to deny a large portion of this claim.

46. The Defendants have failed to bear its burden of proof that an exclusion or requirement in the Plan Document supports its denial of a large portion of the claim for C.R.'s treatment.

47. The Defendants failed to offer the Plaintiff a "full and fair review" as required by ERISA.

48. The Defendants failed to offer the Plaintiff "higher than marketplace quality standards," as required by ERISA. MetLife v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).

49. The actions of the Defendants and/or their agents, as outlined above, are a violation of ERISA, a breach of fiduciary duty, and a breach of the terms and provisions of the Plan.

50. The actions of the Defendants and/or their agents have caused damage to the Plaintiff in the form of a denial of ERISA medical benefits.

51. The Defendants are responsible to pay the balance of the claim for C.R.'s medical expenses, and to pay Plaintiff's attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), plus pre- and post-judgment interest to the date of payment of the unpaid benefits.

**SECOND CAUSE OF ACTION**
(Breach of Fiduciary Duties Under 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3))

52. Plaintiff realleges and incorporates by reference all paragraphs of this Complaint as though fully set forth herein.

53. Defendants have breached their fiduciary duties under ERISA in the following ways:

   A. Defendants have failed to discharge its duties with respect to the Plan:

   1. Solely in the interest of the participants and beneficiaries of the Plan and

   2. For the exclusive purpose of:

      a. Providing benefits to participants and their beneficiaries; and

      b. Defraying reasonable expenses of administering the Plan.

   3. With the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

   4. By failing to fully investigate the Plaintiff's claims.

   5. By failing to fully respond to the Plaintiff's appeals and requests for information in a timely manner.

   6. And in other ways to be determined as additional facts are discovered.

54. The actions of the Defendants in breaching their fiduciary duties under ERISA have caused damage to the Plaintiff in the form of denied medical benefits.

55. In addition, as a consequence of the breach of fiduciary duties of the Defendants, the Plaintiff has been required to obtain legal counsel and file this action.

56. Pursuant to ERISA and to the U.S. Supreme Court's ruling in <u>CIGNA Corp. v. Amara</u>, 131 S. Ct. 1866, 179 L.Ed. 2d 843 (2011), the Plaintiff's "make-whole relief" constitutes "appropriate equitable relief" under Section 1132(a)(3).

57. Therefore, the Plaintiff is entitled to payment of the medical expenses it incurred in treating C.R., as well as an award of interest, attorney's fees and costs incurred in bringing this action pursuant to the provisions of 29 U.S.C. §1132(g).

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For judgment on Plaintiff's First Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. §1132(a)(1)(B), for unpaid medical benefits in the amount of $31,874.65 for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

2. For judgment on Plaintiff's Second Cause of Action in favor of the Plaintiff and against the Defendants pursuant to 29 U.S.C. 29 U.S.C. §§1104, 1109, and 1132(a)(2) and (3)), for breach of fiduciary duty and equitable damages in the form of unpaid medical benefits in the amount of $31,874.65, for attorneys' fees and costs incurred pursuant to 29 U.S.C. §1132(g), and for an award of pre- and post-judgment interest to the date of the payment of the interest claimed.

For such other equitable relief under 29 U.S.C. §1132(a)(3) as the Court deems appropriate.

DATED this 29th day of January, 2019.

                                    MARCIE E. SCHAAP, ATTORNEY AT LAW

                                    By:  /s/ Marcie E. Schaap
                                                  Attorney for Plaintiff